**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Benjamin Thomas Irwin and Angela Marie Colasanti, | Civil Action No. 2:25-cv-05119-JMY |
| *Plaintiffs,* | |
| v. | |
| Holt International Children's Services, Inc., | |
| *Defendant.* | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT HOLT INTERNATIONAL CHILDREN'S SERVICES, INC.'S**
**MOTION TO DISMISS DUE TO ARBITRATION**
**AND FORUM SELECTION PROVISIONS**

# TABLE OF CONTENTS

**I.**   INTRODUCTION ..........................................................................................................1

**II.**   FACTUAL BACKGROUND ........................................................................................2

    **A.**   Plaintiffs enter into the IASA and Placement Agreement with Holt. ..............................2

    **B.**   The IASA and Placement Agreement contain and incorporate an alternative dispute resolution procedure that requires arbitration in Lane County, Oregon, and a forum selection clause that also points to Lane County, Oregon. ..............................5

    **C.**   Plaintiffs spend more than two weeks with K.R. in Thailand, bring her back to the United States, and later decide not to adopt her. ..............................7

    **D.**   Plaintiffs sue Holt in this Court, asserting contract claims based on specific provisions of the IASA and Placement Agreement and asserting tort and statutory claims based on Holt's alleged misrepresentation of or failure to disclose information about K.R.'s condition and history. ..............................8

**III.**   ARGUMENT ..........................................................................................................10

    **A.**   The Complaint should be dismissed because all of Plaintiffs' claims are subject to mandatory arbitration in Lane County, Oregon. ..............................10

        **1.**   Plaintiffs' claims are subject to mandatory arbitration if they can plausibly be interpreted as "arising out of or relating to the terms or performance of" the IASA or the Placement Agreement and as falling outside the scope of the Placement Agreement's narrow carve-out from the arbitration requirement. ..............................10

        **2.**   All of Plaintiffs' claims can plausibly be interpreted as "arising out of or relating to the terms or performance of" the IASA or the Placement Agreement. ..............................12

        **3.**   All of Plaintiffs' claims can plausibly be interpreted as falling outside the scope of the Placement Agreement's narrow carve-out from the arbitration requirement. ...13

    **B.**   The Complaint should be dismissed because all of Plaintiffs' claims "aris[e] under" the IASA or Placement Agreement and are therefore subject to a Lane County, Oregon, forum selection clause. ..............................16

**IV.**   RELIEF REQUESTED ..........................................................................................18

# I.    INTRODUCTION

Plaintiffs Benjamin Thomas Irwin and Angela Marie Colasanti entered into an International Adoption Services Agreement ("IASA") and a Placement Agreement with Defendant Holt International Children's Services, Inc. ("Holt"), pursuant to which a child in Thailand was referred to and accepted by Plaintiffs for potential adoption. In this lawsuit, Plaintiffs assert twelve counts against Holt—two contract counts and ten tort or statutory counts. The agreements' arbitration and forum selection provisions, however, compel the immediate dismissal of the Complaint without prejudice.

***First***, the IASA and Placement Agreement require a particular alternative dispute resolution ("ADR") procedure, culminating in arbitration in Lane County, Oregon, for all disputes "arising out of or relating to the terms or performance of" the agreements—unless the dispute falls within a narrow contractual carve-out from the requirement. All twelve counts arise out of *and* relate to the terms or performance of the agreements, and none fall within the carve-out.

***Second***, even if arbitration were not required, the IASA and Placement Agreement mandate that any lawsuit based on any dispute "arising under" them must be filed in Lane County, Oregon, unless both parties voluntarily appear elsewhere. Holt has not voluntarily appeared in this Court, and all twelve counts arise under the IASA or Placement Agreement.

Because Lane County, Oregon, is outside of this district, dismissal without prejudice, rather than an order compelling arbitration, is the appropriate relief here.[1] Should they wish to pursue

---

[1]     *See Henry v. Wilmington Trust, NA Brian Sass*, 72 F.4th 499, 504 n.5 (3d Cir. 2023) ("We have held that 9 U.S.C. § 4 does not permit a district court to enter an order compelling arbitration outside the district where it sits. Henry brought his lawsuit in Delaware and the arbitration provision requires arbitration to occur in Roanoke, Virginia. The District Court therefore could not have granted a 9 U.S.C. § 4 petition to compel arbitration in this case. Accordingly, a Rule 12(b)(6) motion to dismiss was the appropriate procedural mechanism for enforcing the arbitration provision at issue in this litigation." (citation omitted)).

their claims against Holt—claims that Holt vehemently contests—Plaintiffs can do so via the contractually agreed-upon procedures and in the contractually agreed-upon forum.

## II. FACTUAL BACKGROUND

### A. Plaintiffs enter into the IASA and Placement Agreement with Holt.

On February 23, 2021, Plaintiffs executed the IASA with Holt. Compl., ¶¶ 44–45 & Ex. 1. The IASA refers to Plaintiffs throughout as "AP," which is shorthand for "prospective Adopting Parent(s)." Compl., Ex. 1 p. 1. Section 2.1 summarizes Holt's obligations under the IASA:

> **2.1 <u>General Obligations</u>**—In consideration of payment by AP of the required fees and of the agreements contained herein, Holt agrees to provide adoption services to AP as specified in this agreement. Such adoption services generally include writing and/or reviewing an adoption study of AP, attempting to refer a child for potential adoption, *obtaining and supplying to AP available information about any such child*, attempting to qualify AP as adoptive parents in the sending country, dealing with foreign authorities and orphanage personnel, attempting to place the child with AP for purposes of adoption, providing assistance with travel and immigration requirements, and providing a post-placement or post-adoption study or review.

*Id.* § 2.1 (emphasis added).

In addition to Section 2.1's general reference to Holt "obtaining and supplying to AP available information about any such child." Sections 7.2., 20.5, and 20.6 detail the scope of Holt's ability and obligations to do so. Given their relation to Plaintiffs' claims in this lawsuit, Holt quotes each of those three Sections in its entirety here:

> **7.2 <u>Available Information Regarding Referred Child</u>**—Holt will make reasonable efforts to obtain all available medical, psychological, and historical records concerning the referred child. All information obtained by Holt regarding the referred child, including available photographs and the results of any HIV and AIDS test, will be provided to AP. Nothing in this subsection, or anywhere else in this agreement, shall be construed to create any obligation on the part of Holt to conduct any assessment, evaluation, testing, or screening of any child. In most situations Holt does not have the opportunity to observe, test, or evaluate a child, and must rely upon third parties in the sending country to provide information about the child. Holt can provide to AP only such information as is reasonably obtainable from such third parties. AP hereby acknowledges and agrees that it is possible that such third parties in the sending country (a) may not be aware of medical,

2

developmental or behavioral issues of a child; (b) may overlook or fail to note signs or symptoms or to provide a child's relevant history (c) may unknowingly or carelessly provide erroneous information; (d) may not be able to provide information or observations about medical, developmental, or behavioral issues that become apparent on or after the child's placement with AP and/or (e) may not be aware of aspects of a child's history that have not been disclosed prior to placement (and which may be disclosed by the child only after placement). The DISCLAIMERS/RELEASES provisions of this agreement expressly apply to this subsection.

**20.5 <u>RELEASE FOR CONDITION OF CHILD</u>**—Holt does not and cannot guarantee, and makes no warranty or representation, express or implied, that a child of any particular age, sex, condition, or nationality, or from any particular orphanage or province, will be assigned to or placed with AP.

The following are risks to the health and wellbeing of any adopted child: (1) poor prenatal care, (2) poor care by parents, caretakers, or guardians, (3) institutionalization (where applicable), (4) poor medical care, and (5) poor medical assessment. In addition, a child may be too young to properly diagnosis or assess many medical or psychological problems.

If you adopt a child who was institutionalized in another country, that child is likely to have undiagnosed medical and psychological problems including, but not limited to, developmental delay, malnutrition, and/or behavioral problems. You probably will not be fully aware of the nature and extent of the child's problems until after the adoption is finalized. Even if the child was not institutionalized, most children adopted from another country are likely to have some undiagnosed medical, psychological, or other problems.

For these reasons, Holt does not and cannot guarantee, and makes no warranty or representation, express or implied, concerning the medical or psychological condition of any child. AP acknowledges that Holt is not and cannot be responsible for any such conditions or problems.

Prior to placement, a child may have been provided with medical examinations, tests, and/or inoculations. Medical professionals may have declared the child "healthy," or free of serious health problems. AP may have specified that AP expects a "healthy" child. AP acknowledges and understands that none of these circumstances guarantees a healthy child. Holt cannot guarantee the results or accuracy of any examinations, tests, inoculations, or assessments.

AP further acknowledges and understands that in some cases, Holt may have arranged for a child's medical or psychological examination, while in other situations, a child may not have been provided with any medical examination or testing. In either event, Holt does not conduct any independent assessment, testing, screening, or evaluation of any child, and Holt has no knowledge of any child's

actual medical or psychological condition other than what has been reported to Holt or may appear in any medical records, all of which will be conveyed to AP.

**RELEASE:** AP hereby releases Holt and holds Holt harmless from any and all responsibility or liability for any type of injury, harm, damage, or loss in any way relating to or arising out of the physical, psychological, or emotional condition of any child assigned to, placed with, or adopted by AP, regardless of when such injury, harm, damage, or loss is known or discovered.

**20.6 RELEASE FOR CHILD'S RECORDS AND INFORMATION**—Holt will make reasonable efforts to provide AP with all available medical, psychological, historical, and other records and information concerning the child. Generally, such records and information originate with persons, agencies, and entities outside Holt. Holt does not and cannot investigate or confirm the information obtained or provided. The information obtained or provided may be inaccurate and/or incomplete. Translations of foreign language documents may be inaccurate. Therefore, Holt does not guarantee, and makes no warranty, express or implied, concerning, the accuracy, validity, applicability, or completeness of any information, medical, psychological, historical, or other records or data regarding any child.

**RELEASE:** AP hereby releases Holt and holds Holt harmless from any and all responsibility or liability for any type of injury, harm, damage, or loss in any way relating to or arising out of any medical, psychological, historical, or other records, data, or information regarding any child assigned to, placed with, or adopted by AP, or any translation of such records, data, or information.

*Id.* §§ 7.2, 20.5, 20.6.

After executing the IASA, Plaintiffs reviewed the children available for adoption on Holt's "Waiting Child List." Compl. ¶ § 47. From among those children, Plaintiffs identified K.R., who was part of Holt's Thailand Special Needs Project and lived in a government-run orphanage in Songkhla, Thailand. *Id.* ¶¶ 47, 50. Holt provided Plaintiffs with records that it had obtained regarding K.R., which Plaintiffs reviewed with physicians from the International Adoption Medicine Clinic at Children's Hospital of Philadelphia. *Id.* ¶¶ 51, 55. Plaintiffs then decided that they wanted to adopt K.R. *Id.* ¶ 57.

On June 24, 2021, Plaintiffs executed the Placement Agreement with Holt with respect to K.R., which also refers to Plaintiffs throughout as "AP." *Id.* ¶ 58 & Ex. 5. The Placement

Agreement contemplates that Plaintiffs would take physical custody of K.R. in Thailand and bring her back to the United States (i.e., "placement"); that Holt would provide various post-placement monitoring, supervision, and evaluation services; and that, after completion of a probationary period, Plaintiffs would finalize their adoption of K.R. in the United States. *See e.g.*, *id.*, Ex. 5 at Recitals 2–4 & §§ 3, 7, 8.2, 8.3, 8.4. Within Section 6, titled "Care of the Child," the Placement Agreement provides that "[f]rom the time of placement, and at all times thereafter, AP is solely responsible for the physical, emotional, educational, and spiritual care, safety, development, and well-being of the child . . . . includ[ing] paying any and all costs, fees or expenses related to the child." *Id.* § 6.1. In addition, Section 10, titled "Disruption," sets forth the obligations of the parties—including the extent of Plaintiffs' continued financial responsibility for the "Care of the Child," *id.* § 10.7, and the extent of Holt's responsibility for the re-placement of the child, *id.* § 10.5—if Plaintiffs or Holt were to disrupt K.R.'s placement with Plaintiffs before Plaintiffs finalized their adoption of her.

**B. The IASA and Placement Agreement contain and incorporate an alternative dispute resolution procedure that requires arbitration in Lane County, Oregon, and a forum selection clause that also points to Lane County, Oregon.**

While the Placement Agreement and IASA are separate documents, the Placement Agreement incorporates the IASA:

2. International Adoption Services Agreement

All the provisions of the International Adoption Services Agreement including but not limited to the recitals, disclaimers, releases, dispute resolution provisions, and provisions concerning contract construction are hereby made a part of this agreement and are as fully enforceable as though those provisions were expressly set forth herein. In the event of any conflict between the provisions of the International Adoption Services Agreement and the provisions contained herein, the terms of this agreement are controlling.

*Id.* § 2.

Among the "dispute resolution provisions" that the Placement Agreement expressly incorporates are Sections 15.1–15.3 of the IASA. Those provisions require a three-step ADR procedure for any dispute "arising or of or relating to the terms or performance of" the agreement, culminating in arbitration in Lane County, Oregon:

> **15.1 <u>Grievance Procedure</u>**—Any and all complaints or claims by AP arising out of or relating to the terms or performance of this agreement must be presented and pursued in accordance with Holt's written "Client Grievance Procedure" . . . . Except as otherwise specifically provided in this agreement or in the Placement Agreement, any complaint or claim of AP which cannot be resolved by the Client Grievance Procedure, and any other dispute, controversy or claim arising out of or relating to the terms or performance of this agreement which cannot be resolved by good faith negotiation among the parties, must be resolved as specified in the following subsections.

> **15.2 <u>Mediation</u>**—The parties agree to attempt in good faith to resolve any unresolved dispute, claim or controversy via mediation.

> **15.3 <u>Arbitration</u>**—If mediation fails to resolve the dispute, claim, or controversy it must be resolved by arbitration in Lane County, Oregon, pursuant to all applicable rules then in effect in the Circuit Court of Oregon for Lane County. . . . Any decision of the arbitrator must be reduced to and entered as final judgment in the appropriate Lane County Oregon court. Such award and judgment constitutes a final and binding adjudication of all matters submitted to arbitration. The parties expressly agree to waive any and all rights to appeal the arbitrator's decision. . . . .

*Id.*, Ex. 1 §§ 15.1, 15.2, 15.3.

The Placement Agreement includes a provision that excludes three categories of claims from this ADR procedure:

> 10.9 <u>Dispute resolution</u> Because the well-being of a child may be at stake, [1] any disruption, initiated by either party, of an adoptive placement exercised in accordance with this agreement is not subject to the grievance and dispute resolution procedure contained in the International Adoption Services Agreement ("the grievance and dispute resolution procedure"). Similarly, [2] any litigation or dispute with regard to custody or guardianship of the child that may arise out of any disruption or termination of this agreement, and [3] AP's financial obligations with regard to the child under Sections 5 and 8.2 of this agreement are not subject to the grievance and dispute resolution procedure. However, any claim by AP for damages attendant to or arising out of any disruption or termination of this

agreement remains subject to the grievance and dispute procedure.
*Id.*, Ex. 5 § 10.9.

The IASA—and, by extension, the Placement Agreement—also points to Oregon in a

choice of law and forum selection provision:

> **15.5 <u>Choice of Law and Venue</u>**—This agreement - including all supplements,
> modifications, and other documents incorporated herein - and all rights,
> obligations, and disputes arising out of it is governed by and construed consistent
> with Oregon law. The parties agree that venue for any dispute arising under this
> agreement is in Lane County, Oregon, or any other jurisdiction in which both
> parties voluntarily appear.

*Id.*, Ex. 1 § 15.5; *see also id.*, Ex. 5 § 2.

### C. Plaintiffs spend more than two weeks with K.R. in Thailand, bring her back to the United States, and later decide not to adopt her.

On April 22, 2023, nearly two years after executing the Placement Agreement, Plaintiffs

travelled to Thailand to meet K.R. and bring her back to the United States. Compl. ¶¶ 71–73, 97–

98. According to the Complaint, while in Thailand, "it became clear to Plaintiffs that Holt had

misrepresented, omitted, and/or distorted key, material information about K.R., particularly

concerning her medical, psychological and behavioral complications." *Id.* ¶ 6. *Holt disputes this*

*allegation but accepts it as true for purposes of this motion to dismiss only.* Plaintiffs assert that,

"[w]ithin those first few weeks that K.R. was with the family in Thailand, the child attempted to

strangle Plaintiffs in front of their daughter, attempted to jump off an eleven-story hotel balcony,

destroyed property, attempted to run away, and repeatedly engaged in self harm," and that "K.R.'s

behavior became so dangerous and extreme that the family could not safely be in public together."

*Id.* ¶ 7.

From Thailand, Plaintiffs consulted with various medical providers in the United States

regarding "whether to bring [K.R.] to the United States for care, or to leave Thailand without her."

*Id.* ¶ 84. On May 9, 2023, Holt reminded Plaintiffs, "[Y]ou do not have to do this. You can leave Thailand without her." *Id.*, Ex. 12. Despite their concerns, however, Plaintiffs decided to return to the United States with K.R. and left Thailand with her on May 10, 2023. *Id.* ¶¶ 96–98. In the United States, K.R. continued to demonstrate "violence, aggression, and dangerous behaviors both towards herself and Plaintiffs' family." *Id.* ¶ 99. In light of K.R.'s behavioral challenges, Plaintiffs ultimately chose not to proceed with adopting her. *Id.* ¶¶ 120, 126, 127.

> **D. Plaintiffs sue Holt in this Court, asserting contract claims based on specific provisions of the IASA and Placement Agreement and asserting tort and statutory claims based on Holt's alleged misrepresentation of or failure to disclose information about K.R.'s condition and history.**

Despite the above arbitration and forum selection provisions, Plaintiffs filed this lawsuit against Holt in this Court on September 5, 2025. The twelve counts in the Complaint can be divided into two categories: (1) two contract counts and (2) ten tort or statutory counts.

First, in **Count 1** and **Count 8**, Plaintiffs seek a declaratory judgment that their financial obligations under Sections 6 and 10.7 of the Placement Agreement for the "Care of the Child" have concluded, Compl. ¶¶ 163–65; claim that Holt breached Sections 2.1, 7.2, and 20.6 of the IASA by allegedly misrepresenting or failing to disclose to Plaintiffs information concerning K.R.'s condition and history, *id.* ¶¶ 216–19; and claim that Holt breached Section 10.5 of the Placement Agreement by allegedly failing to make reasonable efforts to re-place K.R, *id.* ¶¶ 220–21.

Second, in **Counts 2–7** and **Counts 9–12**, Plaintiffs assert tort and statutory claims that are based on the same fundamental allegation as their claim for breach of the IASA: that Holt allegedly

misrepresented or failed to disclose information concerning regarding K.R.'s condition and

history.[2]

---

[2]      **Count 2**: International or Fraudulent Misrepresentation ("167. Defendant Holt made representations to Plaintiffs both orally and in writing concerning the existence and extent of K.R.'s medical, behavioral, and psychological complications. . . . 170. Upon information and belief, Defendant Holt's representations concerning K.R. were made falsely and recklessly, with knowledge of that falsity or recklessness as to whether such representations were true or false.").
      **Count 3**: Intentional or Fraudulent Non-Disclosure/Concealment ("176. Defendant Holt concealed from and/or failed to disclose information to Plaintiffs, at multiple points in time, concerning the existence and extent of K.R.'s medical, behavioral, and psychological conditions and complications, as well as abuse occurring within multiple orphanages serviced by Holt's Thailand Special Needs Project.").
      **Count 4**: Intentional Infliction of Emotional Distress ("185. The knowing or reckless provision of false information by adoption agencies or intermediaries, like Defendant Holt, to prospective adoptive parents, like Plaintiffs, so as to induce them to accept a particular child is reprehensible. Additionally, false or misleading information about the medical or psychological conditions or prior physical abuse of children placed for adoption is likely to have devastating results and is substantially certain to result in emotional harm to prospective adoptive parents, like Plaintiffs.").
      **Count 5**: Negligent Infliction of Emotional Distress ("193. Defendant Holt breached its duty of care owed to Plaintiffs by misrepresenting, concealing, failing to reasonably investigate, and/or failing to disclose critical and material information regarding K.R.'s prior history, including, but not limited to, K.R.'s severe psychological trauma, K.R.'s history of violent and destructive behavior, K.R.'s history of trauma, and K.R.'s diagnosed or otherwise readily apparent behavioral and/or psychological disorders, despite Holt's being in possession of, or having access to, such information.").
      **Count 6**: Negligent Misrepresentation ("199. Despite its duty to do so, Defendant Holt negligently misrepresented and/or omitted material facts and information about K.R. which were known to it, or which it should have discovered through the exercise of reasonable care and investigation. These misrepresented and/or omitted facts and information include, but are not limited to, K.R.'s: a. History of severe, aggressive, and destructive behaviors; b. Severe psychological/psychiatric disorders; and c. Experience with psychological, physical, and/or sexual abuse or trauma.").
      **Count 7**: Negligent Non-Disclosure/Concealment ("Despite its duty to do so, Defendant Holt negligently concealed from or failed to disclose to Plaintiffs material facts and information about K.R. which were known to it, or which it should have discovered through the exercise of reasonable care and investigation. These concealed and/or undisclosed facts and information include, but are not limited to, K.R.'s: a. History of severe, aggressive, and destructive behaviors; b. Severe psychological/psychiatric disorders; and c. Experience with psychological, physical, and/or sexual abuse or trauma.").
      **Count 9**: Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("229. Defendant Holt knowingly represented to Plaintiffs, as K.R.'s prospective adoptive

## III. ARGUMENT

### A. The Complaint should be dismissed because all of Plaintiffs' claims are subject to mandatory arbitration in Lane County, Oregon.

#### 1. Plaintiffs' claims are subject to mandatory arbitration if they can plausibly be interpreted as "arising out of or relating to the terms or performance of" the IASA or the Placement Agreement and as falling outside the scope of the Placement Agreement's narrow carve-out from the arbitration requirement.

The Federal Arbitration Act ("FAA") reflects a "national policy favoring arbitration." *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019). In considering a motion that, like this one, seeks to enforce an arbitration provision, "a court must consider two 'gateway' questions: (1) whether the parties have a valid arbitration agreement at all (i.e., its enforceability), and (2) whether a concededly binding arbitration clause applies to a certain type of controversy (i.e., its scope)." *Id.* (internal quotations omitted). Plaintiffs do not contest the

---

parents, the nature of K.R.'s medical history, psychological profile, behavioral history, and history of abuse, including representing that K.R. did not exhibit extreme or severe behavioral complications, when Defendant Holt knew that such representations were false and misleading and created a high likelihood that Plaintiffs would misunderstand K.R.'s profile and needs.").

**Count 10**: Negligence ("234. Defendant Holt owed a duty to provide Plaintiffs, as K.R.'s prospective adoptive parents, with truthful, complete, and accurate records and information pertaining to K.R.'s background, including but not limited to K.R.'s medical history, psychological profile, behavioral history, and history of abuse, that was in Defendant Holt's possession or control or that was reasonably available to Defendant Holt in a reasonable amount of time. 235. Defendant Holt breached its duty to provide such truthful, complete, and accurate information and records to Plaintiffs, as K.R.'s prospective adoptive parents.").

**Count 11**: Negligent Placement of Adoptive child ("240. Defendant Holt negligently misrepresented, concealed, and/or failed to disclose to Plaintiffs material information concerning K.R.'s background, including but not limited to K.R.'s medical history, psychological profile, behavioral history, and history of abuse.").

**Count 12**: Wrongful Adoption ("246. At the time Defendant Holt made the aforementioned statements and representations referenced throughout this Complaint regarding K.R.'s medical history, psychological profile, and behavioral history, and/or prior to K.R.'s placement with Plaintiffs, Defendant Holt knew or should have known that such statements, representations, and omissions were false, inaccurate, misleading, and/or materially incomplete.").

enforceability of the parties' arbitration agreement, only whether Plaintiffs' claims fall within the agreement's scope. *See* Compl. ¶ 61.

Resolving the "scope" question requires this Court to look to Oregon law. The Third Circuit has explained that "applicable state law governs the scope of an arbitration clause—as it would any other contractual provision—in the first instance." *Remicade*, 938 F.3d at 522. If "state law definitively determines whether a given claim is inside or outside the scope of an arbitration agreement," the Court need look no further. *Id.* at 521–22. If state law does not definitively answer the question, "the federal law favoring arbitration embodied in the FAA provides the default rule," *id.* at 521, and any "ambiguities about the scope of [the] arbitration agreement must be resolved in favor of arbitration," *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 189 (2019). Section 15.5 of the IASA—which the Placement Agreement incorporates—provides that "[t]his agreement - including all supplements, modifications, and other documents incorporated herein - and all rights, obligations, and disputes arising out of it is governed by and construed consistent with Oregon law." Compl., Ex. 1 § 15.5, Ex. 5 § 2. Oregon law therefore governs whether Plaintiffs' claims fall within the scope of the arbitration agreement contained in the IASA and incorporated into the Placement Agreement

When interpreting the scope of an arbitration agreement, "Oregon, like the federal courts, recognizes a presumption in favor of arbitrability." *Livingston v. Metro. Pediatrics, LLC*, 227 P.3d 796, 803 (Ore. App. 2010). Under Oregon law, "the inquiry is whether the arbitration clause is susceptible to an interpretation that covers the parties' dispute, i.e., whether the clause can *plausibly* be interpreted to require arbitration." *Id.* (emphasis in original). Thus, this Court should require Plaintiffs to follow the contractual arbitration requirement for any of their claims that both (1) can plausibly be interpreted as "arising out of or relating to the terms or performance of" the

IASA or Placement Agreement and (2) can plausibly be interpreted as falling outside of the three categories of claims that the Placement Agreement exempts from the arbitration requirement. The answer to both of those questions is "yes" as to all twelve counts in the Complaint.

**2.      All of Plaintiffs' claims can plausibly be interpreted as "arising out of or relating to the terms or performance of" the IASA or the Placement Agreement.**

All twelve counts in the Complaint can plausibly be interpreted as "arising out of or relating to the terms or performance of" the IASA or the Placement Agreement. Compl., Ex. 1 § 15.1. Indeed, they all "aris[e] out of" *and* "relat[e] to the terms or performance of" the agreements. Starting with the two contract counts, Counts 1 and 8 are expressly based on specific provisions in the agreements. Count 1 seeks a declaratory judgment that Plaintiffs' financial obligations under Sections 6 and 10.7 of the Placement Agreement have concluded and Count 8 asserts breaches of Holt's obligations under Sections 2.1, 7.2, and 20.6 of the IASA and Section 10.5 of the Placement Agreement. *See* page 8 above. Thus, Count 1 "aris[es] out of" and "relat[es] to the terms or performance of" the Placement Agreement and Count 8 "aris[es] out of" and "relat[es] to the terms or performance of" the IASA and Placement Agreement.

Even though they may not be based on specific provisions of the IASA or Placement Agreement, the tort and statutory counts likewise all "arise[] out of" and "relat[e] to the terms or performance of" the IASA or Placement Agreement. *See Livingston*, 117 P.3d at 804 (applying Oregon law and describing "arising out of or relating to this Agreement, or the breach thereof" as "expansive language" that requires arbitration for "*any*" dispute, including non-contract claims, "as long as the subject matter of the dispute arises out of or relates to the . . . agreement" (emphasis in original)); *see also Remicade*, 938 F.3d at 523 (applying New Jersey law to agreement to arbitrate any dispute, including non-contract claims, "arising out of or relating to this agreement"

12

and explaining that "[s]uch broad clauses have been construed to require arbitration of any dispute between the contracting parties that is connected in any way with their contract").

Again, all ten tort and statutory counts are based on the allegation that Holt mispresented or failed to disclose to Plaintiffs information about K.R.'s condition and history before she was placed with them. *See* pages 8-10 above. The only reason why Holt had any obligation—be it contractual or otherwise—to obtain and provide Plaintiffs with information about K.R. was the fact that Holt agreed in the IASA to help Plaintiffs identify a child for potential adoption and agreed in the Placement Agreement to the placement of K.R. with Plaintiffs. All ten claims thus "arise[] out of" and "relat[e] to the terms or performance of" the IASA and Placement Agreement. In addition, in Sections 2.1, 7.2, 20.5, and 20.6, the IASA addresses extensively the issue of Holt's obligations to obtain and provide Plaintiffs with information concerning a referred child's condition and history. *See* pages 2-4 above. All ten tort and statutory claims thus also "relat[e] to the terms or performance of" those specific Sections of the IASA. *See Remicade*, 938 F.3d at 523 (explaining that "'relating to' . . . is broader than . . . 'arising out of'" and that "a claim need only have some logical or causal connection to the agreement to be related to it").

### 3. All of Plaintiffs' claims can plausibly be interpreted as falling outside the scope of the Placement Agreement's narrow carve-out from the arbitration requirement.

In addition to all "arising out of or relating to the terms of the performance of" the IASA or Placement Agreement, Compl., Ex. 1 § 15.1, all twelve counts in the Complaint can plausibly be interpreted as falling outside of the three discrete categories of claims that the Placement Agreement exempts from the contractual arbitration requirement, *id.*, Ex. 5 § 10.9.

As an initial matter, none of the twelve counts disputes "any disruption, initiated by either party, of an adoptive placement exercised in accordance with [the Placement Agreement]." *Id.*

13

Section 10 of the Placement Agreement governs a disruption of K.R.'s placement with Plaintiffs, which may be initiated by either Plaintiffs or Holt. *Id.* § 10.1. As Section 10.9 acknowledges, a disruption can implicate "the well-being of the child," which is why disputes over a disruption are excused from the arbitration requirement. The mere fact that a disruption may have occurred, however, is not enough to bring Plaintiffs' claims within the scope of this exclusion. Tellingly, while the IASA extends the arbitration requirement to "any and all complaints or claims . . . arising out of or relating to the terms or performance of this agreement," *id.*, Ex. 1 § 15.1, Section 10.9 of the Placement Agreement's first category of claims exempted from that requirement only extends to a "disruption" itself—not to "any and all complaints or claims arising from or relating" thereto, *id.*, Ex. 5 § 10.9. Further confirming the narrowness of this exclusion, Section 10.9 itself specifies that none of the three categories of exempted claims includes "any claim by AP for damages attendant to or arising out of any disruption or termination of this agreement." *Id.*[3]

With respect to the next category of claims excluded from the arbitration requirement by Section 10.9 of the Placement Agreement, none of the twelve counts in the Complaint is a dispute "with regard to the custody or guardianship of the child that . . . ar[o]se out of any disruption or

---

[3]    In their Complaint, Plaintiffs construe the final sentence of Section 10.9 to mean that the ADR procedure set forth in the IASA and incorporated into the Placement Agreement "applies only to claims 'for damages attendant to or arising out of any disruption or termination of [the Placement Agreement.]" Compl. ¶ 61 (brackets in Compl.). That is incorrect. The ADR procedure—including its arbitration requirement—applies to "[a]ny and all complaints or claims by AP arising out of or relating to the terms or performance of" the IASA or the Placement Agreement, "[e]xcept as otherwise specifically provided in [the IASA] or in the Placement Agreement." *Id.*, Ex. 1 § 15.1, Ex. 5 § 2. Section 10.9 of the Placement Agreement in turn excludes three discrete categories of claims from the ADR procedure, leaving all other qualifying claims undisturbed. *Id.*, Ex. 5 § 10.9. Again, the final sentence of Section 10.9 simply confirms the narrowness of the exceptions by clarifying that, even though disputes over "disruption" are now excluded, "claim[s] for damages attendant to or arising out of any disruption or termination of [the Placement Agreement]" remain subject to the ADR procedure, *id.*,—like all other claims by Plaintiffs "arising out of or relating to the terms of performance" of the IASA or the Placement Agreement, Compl., Ex. 1 § 15.1.

termination of [the Placement Agreement]." Compl., Ex. 5 § 10.9. Indeed, as Plaintiffs acknowledge in their Complaint, the issue of the post-disruption custody or guardianship of K.R. has been the subject of separate dependency proceedings in the Chester County Court of Common Pleas. Compl. ¶ 156.

Finally, as to the last category of claims that Section 10.9 of the Placement Agreement exempts from the arbitration requirement, none of the twelve counts in the Complaint is a dispute "with regard to . . . AP's financial obligations with regard to the child under Sections 5 and 8.2 of [the Placement Agreement]." *Id.*, Ex. 5 § 10.9. The only financial obligation referenced in Section 5 of the Placement Agreement is "payment by AP of all required fees . . . in the sending country [i.e., Thailand]." *Id.* § 5.1. Section 8.2 does not impose any financial obligations and refers instead to Plaintiffs' obligation to obtain the consent of Holt and the U.S. Secretary of State before finalizing K.R.'s adoption. *Id.* § 8.2. The Complaint does not mention Sections 5 or 8.2 at all.

\* \* \*

Oregon law thus "definitively determines" that all twelve counts in the Complaint fall within the scope of the parties' arbitration agreement and are therefore subject to binding arbitration in Lane County, Oregon. *Remicade*, 938 F.3d at 521–22. Moreover, "the federal law favoring arbitration embodied in the FAA" would dictate the same conclusion, even if Oregon law did not supply the definitive answer that it does. *Id.* at 521. Because the arbitration provision to which Plaintiffs agreed prohibits them from filing any of their twelve counts in court—as opposed to in arbitration—their Complaint should be dismissed in its entirety. *See Henry v. Wilmington Trust, NA Brian Sass*, 72 F.4th 499, 504 n.5 (3d Cir. 2023) (explaining that "9 U.S.C. § 4 does not permit a district court to enter an order compelling arbitration outside the district where it sits" and

that "a Rule 12(b)(6) motion to dismiss [is] the appropriate procedural mechanism for enforcing

[an] arbitration provision" that requires arbitration in a different district).

### B. The Complaint should be dismissed because all of Plaintiffs' claims "aris[e] under" the IASA or Placement Agreement and are therefore subject to a Lane County, Oregon, forum selection clause.

The parties agreed in the IASA—and incorporated that agreement into the Placement

Agreement—that "venue for any dispute arising under this agreement is in Lane County, Oregon,

or any other jurisdiction in which both parties voluntarily appear." Compl., Ex. 1 § 15.5, Ex. 5 §

2.[4] Just as it has with respect to an arbitration agreement, the Third Circuit has held that the

invocation of a forum selection clause gives rise to two inquiries: "enforceability" and "scope." *In

re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018). The former is a

matter of "[f]ederal law," *id.*, which requires the Court to enforce the forum selection clause here

unless Plaintiffs make a "'strong showing'" that the forum of Lane County, Oregon, is "'so gravely

difficult and inconvenient that [they] will for all practical purposes be deprived of [their] day in

court *or* that the clause was procured through 'fraud or overreaching,'" *Foster v. Chesapeake Ins.

Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S.

1, 15, 18 (1972)). Plaintiffs have not made—and cannot make—either such showing.

Unlike with the issue of enforceability, the Court must "use state law to determine the scope

of [the] forum selection clause—that is, whether the claims and parties involved in the suit are

subject to the clause." *McGraw-Hill*, 909 F.3d at 58 (internal quotation marks omitted). Once

more, Oregon supplies that state law due to the choice of law provision that is in the IASA and

---

[4]     The Court should not consider Holt's forum selection argument until after considering Holt's arbitration argument. *See Hause v. City of Sunbury*, 2022 U.S. App. LEXIS 6330, at *5 (3d Cir. Mar. 11, 2022) ("[C]ourts should rule on a motion to compel arbitration before resolving the case on alternative, nonjurisdictional grounds.").

incorporated into the Placement Agreement. Compl., Ex. 1 § 15.5, Ex. 5 § 2. Oregon law requires the Court to assess "whether the parties intended the forum-selection clause to include the present controversy by examining the text and context of the provision." *Peters v. C21 Invs., Inc.*, 520 P.3d 920, 926 (Ore. App. 2022).

Here, the text and context demonstrate such an intent. Again, Count 1 is expressly based on Sections 6 and 10.7 of the Placement Agreement, and Count 8 is expressly based on Sections 2.1, 7.2, and 20.6 of the IASA and Section 10.5 of the Placement Agreement. *See* page 8 above. Both counts thus "aris[e] under" the IASA and/or Placement Agreement—just as they "aris[e] out of . . . the terms or performance of" the IASA and/or Placement Agreement for purposes of the contractual arbitration requirement. *See* page 12 above. The ten tort and statutory counts likewise "aris[e] under" the IASA and Placement Agreement for the same reason that they "aris[e] out of . . . the terms or performance of" the IASA and Placement Agreement: all ten are based on Holt's alleged misrepresentation of or failure to disclose information to Plaintiffs concerning K.R. condition and history, and Holt only had an obligation to obtain and provide such information because it agreed in the IASA to help Plaintiffs identify a child for potential adoption and agreed in the Placement Agreement to the placement of K.R. with Plaintiffs. *See* pages 8-10 & 13 above.

Because all twelve counts in the Complaint "aris[e] under" the IASA and/or the Placement Agreement, Plaintiffs may not bring any of them in this Court unless Holt "voluntarily appears" here. Compl., Ex. 1 § 15.5. Holt has not done so. Therefore, if the Court determines that any of the twelve counts are not subject to the contractual arbitration requirement, the Court still should dismiss those counts as filed in the wrong forum. *See Loc Performance Prods., Inc. v. Fid. Tech. Corp.*, 2020 U.S. Dist. LEXIS 60795 at *4 (E.D. Pa. Apr. 07, 2020) ("The Third Circuit has held

that dismissal under Rule 12(b)(6) is . . . a proper way to enforce a forum selection clause." (citing

*Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 297 (3d Cir. 2001)).[5]

## IV.    RELIEF REQUESTED

For all these reasons, Defendant Holt International Children's Services, Inc., requests that

the Court dismiss Plaintiffs' Complaint without prejudice.

<strong>STAPLETON SEGAL COCHRAN LLC</strong>

November 7, 2025                    By:  /s/ *Eli Segal*                                
                                         Eli Segal (PA ID 205845)
                                         John S. Stapleton (PA ID 200872)
                                         Michael Weingartner (PA ID 334465)
                                         1760 Market Street, Suite 403
                                         Philadelphia, PA 19103215.402.6555
                                         esegal@stapletonsegal.com

                                         *Counsel for Defendant Holt International Children's*
                                         *Services, Inc.*

---

[5]     Because the forum selection clause provides that venue is "in" Lane County, Oregon, venue would be proper in either a state or federal court in Lane County, Oregon, for any claims not subject to mandatory arbitration. *See New Jersey v. Merril Lynch & Co.*, 640 F.3d 545, 549 (3d Cir. 2011).